**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kaleb Willoughby,<br><br>                Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                Defendant. | No. CV-23-00544-TUC-JGZ<br><br>**ORDER** |

On January 17, 2025, Magistrate Judge Eric J. Markovich issued a Report and Recommendation ("R&R") recommending the Court deny Plaintiff Kaleb Embrace's (formerly Willoughby) Complaint and affirm the final decision of the Commissioner. (Doc. 23.) On January 31, 2025, Plaintiff filed a timely Objection to the Report and Recommendation, and the Commissioner filed a Response. (Docs. 24, 25.) After reviewing the record, the Report and Recommendation, and the arguments raised in Plaintiff's Objection, the Court will overrule the Objection and adopt Magistrate Judge Markovich's Report and Recommendation in full.

**I.     Factual & Procedural History**

Since neither party objects to the Magistrate Judge's summary of the factual and procedural background, the Court adopts this section of the R&R in its entirety. (Doc. 23 at 2–39.) The Court summarizes below the facts and procedural history relevant to the Objection.

On June 6, 2021, Plaintiff filed a Title II application for Disability Insurance

Benefits ("DIB"), alleging disability as of November 2, 2020. (*Id.* at 2.) Plaintiff's application was denied initially and on reconsideration. (*Id.*) On March 16, 2023, Administrative Law Judge ("ALJ") Charles Davis issued an unfavorable decision. (*Id.*) On October 19, 2023, the Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review and adopted the ALJ's unfavorable decision as the agency's final decision. (*Id.*; Doc. 17 at 2.) This appeal followed.

In the unfavorable decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 2, 2020; has the severe impairments of degenerative disc disease and degenerative joint disease of the thoracic spine; and does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 23 at 41.) "[T]he ALJ determined that 'the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except is limited to lifting and carrying 50 pounds occasionally, 25 pounds frequently, and 10 pounds constantly, and sitting for 6 hours and standing and/or walk[ing] for 6 hours[,] . . . frequently [c]limbing ladders, ropes, and scaffold, stooping, and crawling, and can have frequent exposure to unprotected heights and moving, mechanical machinery.'" (*Id.*) The ALJ found Plaintiff capable of performing past relevant work as an aircraft mechanic, home attendant, court clerk, janitor, pet sitter, and fast-food worker, and that such work does not require the performance of work-related activities precluded by his residual functional capacity ("RFC"). (*Id.*) Thus, the ALJ determined Plaintiff was not disabled under 20 C.F.R. § 404.1520(f). (*Id.*); AR 23.

In his Opening Brief, Plaintiff makes two arguments why the case should be remanded for reconsideration of the evidence. (*See* Doc. 17.) First, Plaintiff argues the ALJ failed to consider the impact of somatic symptom disorder and that such failure was harmful, even though Step Two of the five-step evaluation process was decided in Plaintiff's favor, because "pain in excess of what could reasonably be explained by the orthopedic complaints as well as fatigue, [we]re not accounted for in the RFC." (Doc. 17 at 5–9.) Second, Plaintiff argues the ALJ failed to articulate clear and convincing reasons

for disregarding Plaintiff's subjective testimony. (*Id.* at 9–11.)

In the R&R, Judge Markovich found that "the ALJ did not err in excluding Somatic Symptom Disorder at Step Two" because no provider diagnosed Plaintiff with somatic symptom disorder, nor was there any evidence "that Plaintiff's providers considered the disorder a severe impairment." (Doc. 23 at 42–44, 47.) Thus, the ALJ had no obligation to discuss somatic symptom disorder at Step Two because it was not a medically determinable impairment established by objective medical evidence. (*See id.*) Judge Markovich also found that the ALJ properly discounted Plaintiff's symptom testimony. (*Id.* at 44–47.)

## II. R&R Standard of Review

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). The party seeking de novo review must provide "*specific* written objections to the proposed findings and recommendations" of the magistrate judge. Fed. R. Civ. P. 72(b)(2) (emphasis added). "[D]istrict courts conduct proper de novo review [of a magistrate judge's findings and recommendations] where they state they have done so, even if the order fails to specifically address a party's objections." *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023) (citing *Wang v. Masaitis*, 416 F.3d 992, 1000 (9th Cir. 2005)).

## III. Discussion

Plaintiff makes two objections to the R&R: (1) even if somatic symptom disorder was not specifically diagnosed by a psychiatric professional, the ALJ was required to discuss symptoms that could not be explained by Plaintiff's physical impairments because "the record shows somatoform or related diagnoses"; and (2) the ALJ improperly disregarded Plaintiff's subjective symptom testimony because "the diagnosis of a somatoform disorder requires unremarkable physical examinations and laboratory results," and the Magistrate Judge redefined Plaintiff's allegations regarding the limiting effects of

his pain and fatigue. (*See* Doc. 24.) The Court will address the objections in turn.

### A. Legal Standard

The Court will "set aside a denial of Social Security benefits *only* when the ALJ['s] decision is based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (emphasis added). "Under the substantial-evidence standard, a court looks to the existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation omitted) (alterations in original). Substantial evidence is not a high standard and "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B. The ALJ's Consideration of Somatic Symptom Disorder

Plaintiff argues the Magistrate Judge erred in finding that because no mental health professional diagnosed Plaintiff with somatic symptom disorder ("SSD"), SSD was not a medically determinable impairment the ALJ was required to discuss at Step Two. (Doc. 24 at 1–3.) The Court agrees with Judge Markovich's findings; the ALJ did not err by failing to discuss SSD at Step Two, and any error was harmless because the ALJ discussed Plaintiff's pain-related symptoms and limitations when determining his RFC.

At Step Two of the sequential evaluation process, the SSA considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "Step two is merely a threshold determination meant to screen out weak claims . . . It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921. The impairment "must be established by objective medical evidence from an acceptable medical source." *Id.* A claimant's statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. *Id.*

The Magistrate Judge addressed Plaintiff's argument that "his physicians have long

diagnosed pain disorder with psychological factor," finding, after an exhaustive review of Plaintiff's medical records, that no mental or behavioral health provider ever diagnosed SSD, which is specifically defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"). (Doc. 23 at 42–44 (citations and quotations omitted).) Plaintiff argues that a diagnosis from a psychiatric professional is not necessary to find that a somatoform disorder is a medically determinable impairment and that his medical records contain evidence of a somatoform disorder as defined in Listing 12.07A. (Doc. 24 at 1–2.) However, no provider *of any kind* diagnosed Plaintiff with SSD. As the Magistrate Judge explained, Dr. Freebourn included "pain disorder with psychological factor" on Plaintiff's "Problem List." (Doc. 23 at 42–43 (citing AR 1128, 1456, 1461, 1470).) But that is not a diagnosis, let alone a diagnosis of SSD. *See Obiol v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00553-TUC-SHR-BGM, 2023 WL 5436591, at *5 (D. Ariz. July 21, 2023), *report and recommendation adopted*, No. CV-22-00553-TUC-SHR-BGM, 2023 WL 5432317 (D. Ariz. Aug. 23, 2023) (finding the ALJ erred by failing to identify SSD as a medically determinable impairment at Step Two where the claimant was definitively diagnosed with SSD); *John A. v. Saul*, No. C18-5982-MAT, 2019 WL 2616594, at *4 (W.D. Wash. June 26, 2019) (same).

Plaintiff refers the Court to his Reply Brief for a description of how his medical records contain the somatoform disorder factors in Listing 12.07A. (Doc. 24 at 2.) However, the Reply Brief simply concludes that "a somatoform disorder is part of Mr. Embrace's diagnostic profile" without citing to evidence in the Administrative Record. (Doc. 22 at 2.) In his Opening Brief, Plaintiff cites to records from his meetings with Dr. Eppig as evidence that, since November 2020, "his providers have known and stressed the psychological component of his excess pain and encouraged him to include psychiatric care in his pain regime." (Doc. 17 at 6 (citing AR 478–79).) Again, this does not amount to a SSD diagnosis. Dr. Eppig was "concerned Mr. [Embrace]'s reported pain is not concordant with his T-spine MRI findings and biopsychosocial factors are contributing to his perception of pain." AR 477. The biopsychosocial factors were generalized anxiety disorder and past sexual abuse. AR 476. This does not amount to objective medical

evidence of SSD, and therefore Plaintiff's medical records do not show the medically determinable impairment of SSD. An ALJ is not required to discuss SSD in every case where a claimant's medical records contain some evidence of a general psychological aspect to the claimant's pain. *See* 20 C.F.R. § 404.1529(b) ("Medical signs and laboratory findings . . . must show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged."); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."). This is especially true where SSD is not the basis upon which the claimant applied for disability.

Plaintiff argues his counsel's inquiry into the psychological aspects of his pain at hearing should have alerted the ALJ to SSD and prompted him to discuss it as a medically determinable impairment. (Doc. 24 at 3 (citing AR 36–40, 43–44).) However, as noted above, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Counsel is not a medical source, nor are counsel's statements at hearing medical evidence.

Lastly, Plaintiff argues that he was harmed by the ALJ's failure to discuss the limiting effects of Plaintiff's symptoms that could not be explained by his physical impairments when determining his RFC. (Doc. 24 at 3.) The Court agrees with the Commissioner that the ALJ considered Plaintiff's pain and fatigue symptoms in determining the RFC, regardless of whether they derived from his back impairments or somatic symptom disorder. (Doc. 25 at 2; AR 19–23.) Further, Plaintiff has not shown that pain resulting from SSD produced limitations beyond those the ALJ included in the RFC assessment. (*See* Doc. 19 at 11 (citing AR 34–35, 73, 83–84, 1200–06).) Thus, even if the ALJ erred in failing to discuss SSD, the error was harmless.

**C. The ALJ's Consideration of Plaintiff's Subjective Symptom Testimony**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, a claimant must present objective medical evidence of an underlying impairment which could reasonably be expected to produce the

symptoms alleged. *Id.* at 1036 (quotation omitted). If the claimant satisfies "this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Plaintiff raises three objections to the Magistrate Judge's finding that "the ALJ clearly and convincingly explained that Plaintiff's symptom testimony failed to support the relevant disability factors because it was inconsistent with other evidence." (Doc. 23 at 45 (quoting *Rodriguez v. O'Malley*, No. 23-15606, 2024 WL 1714267, at *1 (9th Cir. Apr. 22, 2024)) (cleaned up).) First, Plaintiff argues that because "[t]he diagnosis of somatoform disorder *requires* unremarkable physical examinations and laboratory results," it is irrelevant that Plaintiff's symptom testimony was inconsistent with objective medical evidence. (Doc. 24 at 4.) "An ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494–95 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498 (emphasis in original). Thus, the ALJ properly considered the extent to which Plaintiff's symptom testimony was inconsistent with objective medical evidence, and the ALJ did not reject Plaintiff's symptom testimony *solely* because inconsistent medical evidence existed. AR 20–22. Further, as discussed above, Plaintiff was never diagnosed with SSD or somatoform disorder in the first place.

Second, Plaintiff asserts the Magistrate Judge "ignores Mr. Embrace's actual reported abilities and disabilities in favor of a finding that an ALJ can always reasonably find that a person is 'not disabled' where daily activities include intermittent ability." (*Id.*) The Magistrate Judge made no such finding. Rather, the Magistrate Judge found that a "review of the record supports the ALJ's findings that Plaintiff's activities of daily living are inconsistent with his alleged symptom testimony." (Doc. 23 at 46.) In evaluating a Plaintiff's symptom testimony, ALJs may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Smartt*, 53 F.4th at 499 (quoting

*Lingenfelter*, 504 F.3d at 1040). The Court agrees with the Magistrate Judge that the ALJ "made a reasonable determination based on specific, clear, and convincing evidence that [Plaintiff]'s daily activities were inconsistent with the alleged severity of [his] limitations." *Id.*; *see* AR 21–22; (Doc. 23 at 46). The ALJ discussed Plaintiff's stated ability to lift things, prepare meals, take care of his pets, pull weeds, and do household chores like laundry, vacuuming, and sweeping. AR 21–22. Again, daily activities were not the only clear and convincing reason the ALJ provided for discounting Plaintiff's symptom testimony.

Third, Plaintiff argues the Magistrate Judge redefined his allegations regarding the cause of his disability as "completely disabling pain," rather than pain and fatigue limiting his ability to perform activities for an entire workday as in fact alleged. (Doc. 24 at 4–5.) Plaintiff asserts that the RFC analysis should "stem from the allegations." (*Id.*) The Magistrate Judge did state that the ALJ found Plaintiff's medical records "d[id] not support Plaintiff's allegations of completely disabling pain," (Doc. 23 at 45), but the ALJ addressed Plaintiff's fatigue allegations, AR 20 ("[Plaintiff] testified that he has fatigue and is drained by 2 or 3, and he said that his doctors told him that chronic pain and fatigue go hand in hand."). The Court agrees with the Magistrate Judge that the ALJ provided a thorough review of Plaintiff's testimony, medical evidence, and other evidence in the record that he relied upon in the RFC determination. (Doc. 23 at 45–46 (citing AR 20–22).)

Accordingly,

//
//
//
//
//
//
//
//
//
//

**IT IS ORDERED**:

1. Plaintiff's Objection to the Report and Recommendation (Doc. 24) is **overruled**.

2. Magistrate Judge Markovich's Report and Recommendation (Doc. 23) is **accepted** and **adopted**.

3. The final decision of the Commissioner is **affirmed**.

4. The Clerk of the Court shall enter judgment accordingly and close the file in this matter.

Dated this 17th day of March, 2025.

Jennifer G. Zipps
Chief United States District Judge